THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SHAHEED K. HAMZA, | 4:06CV3001 |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES; ROBERT HOUSTON, Director of DCS; FRED BRITTEN, Warden at TSCI; BRIAN GAGE, Deputy Warden; and MICHELLE YANDA, Unit Administrator, | |
| Defendants. | |

Plaintiff Shaheed K. Hamza, a prisoner in the custody of the Nebraska Department of Correctional Services proceeding pro se, brings this 42 U.S.C. § 1983 action, generally claiming that (1) when Hamza was the target of death threats at Tecumseh State Correctional Institution ("TSCI"), defendants Houston and Britten denied Hamza protective custody or a transfer, and instead placed him in administrative confinement ("AC"), a punitive classification, thereby prejudicing Hamza's future chances for parole; (2) while at TSCI, Hamza was labeled a sexual "predator" based on dismissed or fabricated misconduct reports and unsubstantiated "snitch" reports that were then considered by the Parole Board in "deferr[ing consideration of parole] 10 years until 2016" (Filing 25-3, at CM/ECF page 32); and (3) TSCI staff harassed and retaliated against Hamza by giving him "a razor belonging to . . . a prisoner dying/in final stages of Hepatitis C," a disease which Hamza has now contracted. (Filing 25-3, at CM/ECF page 26.) Hamza requests

1

money damages, as well as various forms of equitable relief.[1]

Plaintiff Hamza has filed numerous motions. Before addressing those motions, I shall first clarify the status of the claims and parties in this case.

## **Procedural Background**

On March 31, 2006, the court noted on initial review that Hamza had, in effect, only sued the State of Nebraska since the defendants were sued in their official capacities only.[2] (Filing 11, Order on Initial Review at 1-2.) Hamza was instructed regarding how to sue the defendants in both their official and individual capacities, if desired, and was given 30 days to amend his complaint accordingly. Meanwhile, Hamza was given one summons and 285 Form so he could serve the State of

---

[1]Specifically, Hamza requests that the court: (1) make the defendants stop using dismissed misconduct reports and unsubstantiated "snitch reports" when determining classification, housing, and employment issues; (2) require the removal of all dismissed misconduct reports and unsubstantiated incident reports from Hamza's classification record, as such reports could be considered by the Parole and Pardon Boards; (3) rule that defendants Houston and Britten failed to protect Hamza's rights regarding classification and health (i.e., gave Hamza a razor to use from another inmate who is dying of Hepatitis C); (4) order the defendants to stop labeling Hamza as a sexual predator; (5) order that Hamza be removed from administrative segregation and placed in protective custody at TSCI (i.e., away from the retaliation, harassment, and known death threats occurring at TSCI); (6) impose an injunction to compel the defendants to follow all administrative regulations and operational memoranda regarding inmate discipline and housing classifications; and (7) impose an injunction requiring the establishment of a "culture of accountability" by appointing a board to monitor racism at TSCI. (Filing 25-3, "Facts, Claims and Relief".)

[2]"[A] claim against a State employee, in his or her official capacity, is in reality a claim against the State itself, as the entity that employs the officer." (Filing 11, Order on Initial Review, at 2 (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).)

Nebraska, which was the only defendant at that time. The court's order on initial review also informed Hamza that Fed. R. Civ. P. 4 requires service of the complaint on a defendant within 120 days of filing the complaint; that failure to obtain service within the designated timeline "may result in dismissal of this matter without further notice as to such defendant"; and that both parties are bound by the Federal Rules of Civil Procedure and the Local Rules of this court. (Filing 11, Order on Initial Review at 3-4.)

Proof of service on the Nebraska Department of Correctional Services, liberally construed as the State of Nebraska, was filed on May 16, 2006, showing service on the Nebraska Attorney General pursuant to Neb. Rev. Stat. § 25-510.02(1) (service on the State of Nebraska, any state agency, and state employees sued in their official capacity are to be served by leaving summons at the office of the Attorney General). (Filing 16.)

On May 4 and October 25, 2006, Hamza moved to amend his complaint to sue the defendants in their individual capacities and requested additional summons and 285 Forms for that purpose. (Filings 14, 23.) The court granted Hamza leave to file an amended complaint by November 27, 2006, and ordered that the Clerk of Court provide him four additional summons and 285 Forms. The order again instructed Hamza regarding how to serve defendants in their individual capacities.[3] (Filing 24.) Hamza filed his amended complaint on November 13, 2006, adding two defendants and specifying that the defendants were being sued in their official and individual capacities. (Filing 25.) Despite Hamza's professed desire to sue the defendants named in his amended complaint in both their official and individual capacities, and

---

[3]"In their individual capacity, only one defendant may appear on a summons, and a government employee is served, in his or her *individual* capacity, at an address, such as home or present place of employment, wherever the defendant can personally be found and will accept service of process himself or herself or through a person authorized to receive a summons on his or her behalf." (Filing 24, at 2.)

3

despite having twice been instructed regarding how to achieve service when naming defendants in their individual and official capacities, Hamza directed in his 285 Forms that service on these defendants be made at the Nebraska Attorney General's office where "official-capacity" service is to be made under Neb. Rev. Stat. § 25-510.02. Such service was accomplished on November 20, 2006. (Filings 36-39, Returns of Service on defendants Yanda, Houston, Gage, and Britten.)

On January 8, 2007, the Nebraska Attorney General's office filed an answer on behalf of defendants NDCS, Houston, Britten, Gage, and Yanda in their official capacities, correctly noting that such defendants were "served in their official capacities only." (Filing 45.) An answer has not been filed on behalf of the defendants in their individual capacities.

On August 24, 2007, Hamza advised this court that he has been moved from TSCI to the Nebraska State Penitentiary. (Filing 56.)

## **Remaining Claims and Defendants**

In pro se proceedings, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

Because Hamza failed to serve any of the defendants in their individual capacities within 120 days after filing his amended complaint on November 13, 2006, (filing 25) and because the court twice clearly explained the method for such service and warned him that failure to achieve service within the designated timeline would result in dismissal, I shall dismiss all defendants in their individual capacities without prejudice pursuant to Fed. R. Civ. P. 4(m). Thus, Hamza makes claims for monetary and equitable relief against NDCS, a state agency, and official-capacity claims against

state employees Robert Houston, director of NDCS; Fred Britten, warden of TSCI; Brian Gage, deputy warden of TSCI; and Michelle Yanda, unit administrator at TSCI.

As previously explained to the plaintiff, a suit against a state employee in his or her official capacity is really a claim against the state itself. (Filing 11, Order on Initial Review at 2.) "The Eleventh Amendment prohibits a citizen from suing a state for money damages in federal court." *Hopkins v. Saunders*, 93 F.3d 522, 526 (8th Cir. 1996). Thus, "[a] claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment." *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989)). "The immunity recognized by the Eleventh Amendment extends to both suits for monetary damages and those for declaratory or injunctive relief . . . ." *In re SDDS, Inc.*, 97 F.3d 1030, 1035 (8th Cir. 1996).

However, "*Ex parte Young*[4] and its progeny teach that a private party may seek prospective injunctive relief in federal court against a state official, even if the state is otherwise protected by Eleventh Amendment immunity." *Randolph v. Rodgers*, 253 F.3d 342, 345 (8th Cir. 2001). That is, "'suits may be brought in federal court against state officials in their official capacities for prospective injunctive relief to prevent future violations of federal law.'" *In re SDDS*, 97 F.3d at 1035 (quoting *Fond du Lac Band of Chippewa Indians v. Carlson*, 68 F.3d 253, 255 (8th Cir. 1995)).

The *Ex parte Young* exception to Eleventh Amendment immunity is limited to *prospective* injunctive relief on the basis of *federal* law. *Dover Elevator Co. v. Arkansas State University*, 64 F.3d 442, 447 (8th Cir. 1995) ("'[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We

---

[4] *Ex Parte Young*, 209 U.S. 123 (1908).

5

conclude that *Young* . . . [is] inapplicable in a suit against state officials on the basis of state law.'") (quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (*Ex parte Young* doctrine "does not permit judgments against state officers declaring that they violated federal law in the past").

Further limiting Hamza's claims is his transfer from TSCI to the Nebraska State Penitentiary, making his claims for declaratory and injunctive relief related to prison conditions, unlawful policies, and conduct of officials at TSCI moot. *Owens v. Isaac*, 487 F.3d 561, 564 (8th Cir. 2007); *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999).

Because all of Hamza's claims against the defendants are for money damages, as well as for equitable relief for alleged *past* violations of federal law occurring at a correctional institution which no longer houses Hamza, all of Hamza's claims must be dismissed as barred by the Eleventh Amendment and as moot.[5]  *See* 29 U.S.C. § 1915(e)(2) (court shall dismiss pro se case at any time if court determines that action fails to state a claim upon which relief may be granted or seeks monetary relief against a defendant who is immune from such relief).

Accordingly,

IT IS ORDERED:

1.  This case is dismissed as against the defendants in their individual

---

[5]Hamza does not appear to make any specific claims against prison officials who now have custody of him at the Nebraska State Penitentiary requesting prospective injunctive relief to prevent future violations of federal law. Therefore, the *Ex parte Young* exception to Eleventh Amendment immunity is inapplicable here.

      capacities without prejudice pursuant to Fed. R. Civ. P. 4(m);

2. Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) & (iii), this case is dismissed as against the defendants in their official capacities with prejudice because such claims are barred by the Eleventh Amendment and/or are moot;

3. All of the pending motions in this case (filings 31, 47, 49, 50, 51, 54) are denied as moot; and

4. Judgment shall be entered by separate document.

August 31, 2007.

                        BY THE COURT:
                        s/ *Richard G. Kopf*
                        United States District Judge